**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

ROBERT K. MANDEL,
and SHARON F. MANDEL,

      Plaintiffs,

      v.                  Case No.: 3:08-cv-49-RV/MD

HARRY R. MCNESBY, Sheriff
of Escambia County, Florida;
CHARLIE WALKER, Code
Enforcement, Supervisor, Escambia
Board of County Commissioners;
SOTIRIOS THAGOURAS, Code
Enforcement Officer, Escambia Board
of County Commissioners;
STEVE LITTLEJOHN, Code
Enforcement Officer, Escambia Board
of County Commissioners,

      Defendants.
_____/

## ORDER

Now pending are five motions to dismiss filed by the defendants (docs. 11, 24, 27, 28, 29).

## I.    BACKGROUND

The following facts are taken from the complaint, and they are assumed true for purposes of this order.

The plaintiffs, Robert and Sharon Mandel, are husband and wife. At all times relevant, Ms. Mandel was the sole owner of A Prestige Services, LLC, d/b/a R-C Express, which was in the business of renting containers for non-household debris collection in Escambia County. Although he did not own the business, it appears to be undisputed that Mr. Mandel assisted in the venture by, *inter alia*, hauling and/or

dumping solid waste from the containers.[1] The defendants are as follows: Harry R. McNesby was Sheriff of Escambia County; Charlie Walker was Code Enforcement Supervisor and Deputy Sheriff; and Sotirios Thagouras and Steve Littlejohn were Code Enforcement Officers and Deputy Sheriffs.

In February 2006, Walker informed Mr. Mandel that Escambia County had begun requiring "all companies and individuals" hauling non-household debris to obtain a solid waste permit from the Escambia County Department of Solid Waste. Thereafter, Mr. Mandel met with the Director of Escambia County Department of Solid Waste, and she told him that R-C Express could continue to operate as long as it was "working toward coming into compliance" with the permit requirement. Mr. Mandel obtained a permit application at that time, but he later learned that the insurance requirement for the permit might be impossible to obtain because of the insurance company rating required by the application.

During this time, R-C Express was dumping the debris from its containers at Saufley Landfill, which was a private landfill in competition with the Escambia County Landfill. According to the complaint, "Walker was engaging in a pattern of selective enforcement against businesses that were dumping at Saufley Landfill in an effort to force that landfill out of business." On April 18, 2006, Thagouras obtained a warrant for Mr. Mandel's arrest for his dumping debris without having first been granted a solid waste permit. When he obtained the warrant, Thagouras knew or should have known that Mr. Mandel did not have an ownership interest in R-C Express. On April 21, 2006, Mr. Mandel met with Thagouras and Littlejohn and was served with a notice of violation of Escambia County Ordinance 82-101, which requires "valid permits" for anyone "managing" solid waste. Mr. Mandel told Thagouras and Littlejohn that he did not own

---

[1] For example, in the notice of violation (discussed *infra* and attached to the complaint as Exhibit C), Mr. Mandel was charged with collecting and disposing of solid waste. He does not dispute that he was, in fact, engaged in such activity. Rather, he focuses on the fact that he did not "have an ownership interest in 'R-C Express'" at the time. *See* Complaint at ¶24; *accord id.* at ¶¶25, 31.

the company. Also during that meeting Mr. Mandel turned in the completed permit application for R-C Express.

On or about April 24, 2006, Walker gave R-C Express permission to pick up another container in Escambia County. The next week Mr. Mandel was arrested on the warrant that Thagouras had obtained earlier. Mr. Mandel was charged with violating Ordinance 82-101. On February 21, 2007, the State Attorney dismissed the charge, although the basis for that dismissal is not clear.

Invoking jurisdiction pursuant to Title 42, United States Code, Section 1983, the plaintiffs filed a three-count complaint against the defendants in state court. Mr. Mandel alleged (i) a "civil rights" violation; and (ii) a state law claim for malicious prosecution; while Ms. Mandel alleged (iii) loss of consortium. With respect to the civil rights and malicious prosecution claims, Mr. Mandel alleged that Thagouras and Littlejohn did not have probable cause for the arrest (because he did not own the company), which violated his rights under the Fourth, Fifth and Fourteenth Amendments. McNesby and Walker, who had the responsibility to supervise, train or review the actions of Thagouras and Littlejohn, allegedly failed to do so, which resulted in violations of those same amendments. The complaint further stated that these omissions constituted a policy or custom within both the Sheriff's Office and Code Enforcement Office that McNesby and the Escambia Board of County Commissioners knew or should have known would result in constitutional violations of the plaintiffs' rights. As a result of the defendants' "acts, lapses, and omissions, the Plaintiff was arrested based upon facts that were inaccurate, flawed, and insufficient." The arrest eventually led to a criminal case that had no "accurate factual basis" and was supported by an affidavit (signed by Thagouras) which contained inaccurate, misleading and false information.

The litigation was removed to this court on the basis of federal question jurisdiction, and the defendants, as noted, have filed several motions to dismiss.

## II.     STANDARD OF REVIEW

In deciding the defendants' motions, I am confined to the four corners of the complaint (and any attachments), and I must take the factual claims therein as true and

view them in the light most favorable to the plaintiffs. *See, e.g., Erickson v. Pardus,* --- U.S. ---, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir. 2000). The Federal Rules of Civil Procedure do not require the plaintiffs to set out in detail the facts upon which they base their claim; rather, Rule 8(a)(2) only requires a "short and plain statement" showing that the pleader is entitled to relief. Nevertheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *accord Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *See Watts, supra,* 495 F.3d at 1295 (quoting *Twombly,* 127 S. Ct. at 1965). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 127 S.Ct. at 1965. It is sufficient if the complaint succeeds in "'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts, supra,* 495 F.3d at 1296 (quoting *Twombly,* 127 S. Ct. at 1965).

### III. DISCUSSION

The plaintiffs' claims are all based upon the alleged false arrest of Robert Mandel. The "civil rights" claim in count I alleges violations under the Fourth, Fifth, and Fourteenth Amendments, although the plaintiffs do not articulate and specify how those amendments were violated. With respect to the Fifth Amendment, it appears that Mr. Mandel is alleging a substantive due process violation. However, "if an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment --- not the more generalized notion of substantive due process . . . --- is the guide for analyzing the claim." *See Jordan v. Mosley,* 2008 WL 3974318, at *2 (11th Cir. Aug. 28, 2008). For example, in *Albright v. Oliver,* 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), the Supreme Court refused to recognize a substantive due process right to be free from criminal prosecution except upon

probable cause (which is what the plaintiffs are alleging here); rather, the Court determined that such a claim must be analyzed under the Fourth Amendment. *See Jordan, supra*, 2008 WL 3974318, at *2. Accordingly, the Fifth Amendment substantive due process claim (to the extent that one is being asserted here) must, and will, be analyzed under the Fourth Amendment.

The Fourth Amendment provides that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . ." U.S. Const. Amend. IV. The plaintiffs allege that Mr. Mandel's arrest was not supported by probable cause. But, the facts set forth by the plaintiffs and established law are to the contrary.

Escambia County Ordinance 82-101 provides that:

> (a) All solid waste generated or otherwise found within the county shall be managed by persons holding valid permits for such activity . . . . "Managed" as used in this section includes collection, transportation, and disposal by any means or method, and any aspect of handling hazardous or infectious waste . . . . Any person who engages in any solid waste management activity on a commercial basis, and any person who establishes a solid waste disposal facility, shall also hold a valid certificate of need or current county franchise.

The complaint itself demonstrates that there was probable cause for the arrest on the basis of this ordinance. The fact that a county representative told Mr. Mandel that he could operate without a permit while his application was being processed does not establish that he was immune from criminal charges. The allegations in the complaint make clear that Mr. Mandel was, in fact, operating a solid waste business without being in compliance with the county code of ordinances. Although business title may have been exclusively in his wife's name, the complaint indicates that he took part in the business by hauling solid waste, meeting with county officials, completing the permit application, and attempting to obtain insurance for the business. It is immaterial that Mr. Mandel was an employee of the business (as opposed to the owner) for the ordinance provides that "*any person* who engages in any *solid waste management activity*," which

Case 3:08-cv-00049-RV-MD   Document 130   Filed 12/29/08   Page 6 of 8

Page 6 of 8

is defined in the code as "collection, transportation, and disposal," must have a "valid certificate." Thus, the fact that he did not own the company does not immunize him from criminal charges for failure to comply with Ordinance 82-101. Nor is it material that the defendants allegedly had an improper motive in arresting and charging him since probable cause existed. *See generally Whren v. United States,* 517 U.S. 806, 811-13, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (expressly rejecting the argument that "ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause" because "[s]ubjective intentions play no role in the ordinary, probable-cause Fourth Amendment analysis."). In short, while the plaintiffs allege that Mr. Mandel's arrest was improper, the plaintiffs appear to concede that Mr. Mandel was indeed hauling solid waste without a permit in derogation of the law. Although Mr. Mandel alleges that the warrant application contained false statements, even assuming that it did, the facts set forth in the complaint show that the arrest was supported by probable cause. Consequently, the Fourth Amendment claim must fail.

And lastly, with respect to the Fourteenth Amendment claim, it appears that Mr. Mandel is alleging violation of equal protection, and not due process.[2] To state a claim for selective enforcement under the equal protection clause of the Fourteenth amendment, the plaintiff must demonstrate: (1) that he was treated differently and less favorably than other similarly situated individuals, and (2) that the defendants unequally applied an ordinance or code provision for the specific purpose of intentionally discriminating against him. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006); *see also GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). Therefore, to establish an equal protection violation, the plaintiff must allege in his complaint that a similarly situated individual was treated better. *See generally Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189 (11th Cir. 2007). "'The reason that there is a 'similarly situated' requirement in the first place is that at their heart, equal

---

[2] The plaintiffs do not mention due process anywhere in their complaint, but they do make reference to equal protection. *See* Complaint at ¶1.

*Case No.: 3:08-cv-49-RV-MD*

protection claims . . . are basically claims of discrimination.' To maintain this focus on discrimination and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with vigor." *Id.* at 1207 (citation omitted).

Notably, the plaintiffs here make no attempt in their complaint to allege that there were similarly situated individuals or businesses that were treated differently. In fact, they state that they were informed that "Florida had begun requiring *all companies and individuals* hauling non-household debris to obtain a Solid Waste Permit from Escambia County Department of Solid Waste," and they state that Walker was enforcing the ordinance against other businesses dumping at the Saufley Landfill as well (not just them). Complaint at ¶¶19, 22 (emphasis added). Consequently, the equal protection claim must fail. *See Griffin Indus., supra,* 496 F.3d at 1202-08; *see also, e.g., GJR Invs., supra,* 132 F.3d at 1367-68 (equal protection claim dismissed where the complaint failed to "present a single instance in which a similarly situated" person was given more favorable treatment; explaining that "a complaint must attempt to show in some fashion that . . . 'other' [individuals] were situated similarly to the plaintiff"); *Roy v. Fulton County School Dist.,* 288 Fed. Appx. 686, 688 (11th Cir. 2008) (equal protection claim dismissed "because nowhere in the complaint do the Roys allege that Mark was similarly situated with any other parties," and, therefore, the complaint failed to "establish[] the necessary elements of an equal protection violation"). Although the complaint implies --- but does not expressly allege --- that the businesses using the Escambia County Landfill were not treated the same way as those using the Saufley Landfill, *see* Complaint at ¶22, that is insufficient to state a claim for equal protection. *See GJR Invs., supra,* 132 F.3d at 1367-68 ("[T]he complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless 'other' permit applicants were given better treatment. Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff."). Accordingly, the claim arising under

the Fourteen Amendment --- and thus the entire "civil rights" claim (count I) --- must fail.

Because there was probable cause for the arrest, discussed *supra*, it follows that the state malicious prosecution claim (count II) must be dismissed as well. *See Burns v. GCC Beverages, Inc.,* 502 So.2d 1217, 1218 (Fla. 1986) (explaining that "the absence of probable cause" is one of the elements that must be established in order to prevail in a malicious prosecution action under Florida law).

And lastly, with respect to Ms. Mandel's loss of consortium claim (count III), the claim cannot survive in light of the dismissal of Mr. Mandel's causes of action. *See, e.g., Faulkner v. Allstate Ins. Co.,* 367 So.2d 214, 217 (Fla. 1979) ("Mrs. Faulkner's claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover."); *Gates v. Foley,* 247 S.2d 40, 45 (Fla. 1971) (wife's loss of consortium claim "is a derivative right and she may recover only if her husband has a cause of action against the same defendant"); *accord Stone v. United States,* 373 F.3d 1129, 1132 (11th Cir. 2004) (district court did not err by dismissing parents' loss of consortium claim when child's claim was dismissed) (citing *Faulkner*).

## IV.   CONCLUSION

For the reasons stated above, the defendants' motions to dismiss (docs. 11, 24, 27, 28, 29) are GRANTED, and the plaintiffs' complaint is hereby DISMISSED.

DONE and ORDERED this 29th day of December, 2008.

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge